## MAT SCHWARZ v. J. S. McCALL.

No. 895. Decided May 24, 1900.

**1. School Land—Purchaser—Right to Buy More.**

A purchaser of a section of school land from one who has purchased it from the State and resided on it for three years as an actual settler, can not purchase an additional section of land from the State, as provided in article 4218f, Revised Statutes, as amended by Act of May 7, 1897, without himself becoming a settler or resident upon either section. (Pp. 19-25.)

**2. Same—Statutes Construed.**

The Act of May 7, 1897 (Revised Statutes, articles 4218f, 4218ff, 4218fff), increased the quantity which might be purchased by actual settlers in the first instance, and gave to previous purchasers or their vendees the privilege of purchasing additional lands within an area of five miles from the home purchase; but with the restriction .that they be actual settlers; the exception of cases "otherwise provided by law" referring only to detached or isolated sections or parts thereof mentioned in article 4218y. (Pp. 20-25.)

**3. Same.**

The right given by statute to a previous purchaser from the State, or his vendee, to buy additional lands, was dependent on his being at the time an actual settler on that first bought, and did not become, by compliance with the condition of three years residence, a right appurtenant to the original purchase and to be exercised by the owner thereof as owner, and not as an actual settler. (P. 24.)

QUESTIONS CERTIFIED by the Court of Civil Appeals for the Second District, in an appeal from Fisher County.

*R. A. Ragland* (*Ragland & Durham*), for appellant.—As far back as 1874 the law gave preference rights to actual settlers in the purchase of State school lands and limits the amount to be purchased to 160 acres. See Rev. Stats., 1879, art. 4052. Also it gives a preference to prospective actual settlers and provides a forfeiture if he fails to settle upon the land within twelve months from the date of his application. Rev. Stats., art. 4054. The Act of 1876, page 75, Revised Statutes, 1879, article 4055, provides that "In case any portion of said lands are not sold to actual or prospective settlers, in accordance with the pro-

visions of preceding articles, within two years from the date of the notice of sale of such lands, any other person may purchase not less than eighty acres and not more than one hundred and sixty acres," etc. At the special session of the Sixteenth Legislature an act was passed allowing one person or corporation to purchase from 160 acres to a section of arable land suitable for farming purposes and from 160 acres to three sections of grazing land. See Acts Spec. Sess. 16th Leg., p. 24, approved July 8, 1879. At the regular session of the Seventeenth Legislature (1881) the above act was amended and one person or corporation was allowed to purchase even as much as seven sections under certain conditions. See Acts 17th Leg., p. 120, sec. 5, approved April 6, 1881. At the regular session of the Eighteenth Legislature (1883) all the school lands were withdrawn from sale until ninety days after the adjournment of the Legislature. See Act, Gen. Laws 1883, p. 3, approved Feb. 3, 1883, at 10 o'clock and 30 minutes a. m. The same session of the Legislature created the State School Land Board, composed of the Governor, Attorney-General, Treasurer, Comptroller, and Commissioner of the General Land Office, and all the State school and asylum lands were placed in their charge, etc., and the actual settler again provided for by being given a six months preference right to purchase at the minimum price fixed by said act not to exceed one section. See sec. 5 of the said act, p. 85. This act permitted purely pasture lands to be sold to others than actual settlers in quantities of not more than seven sections, but the land classed as agricultural land could only be sold to actual settlers or to those who would become actual settlers within six months. The actual settler by making proof of occupancy could get a patent on his land after three years, but others were required to pay interest for seven years (see sections 8 and 9 of the said act, page 87), and the said lands were required to be sold at public auction after due publication, but did not set any special time for the actual settler to live upon his land. This Legislature also created the land fraud board. See the said act, p. 106. The Nineteenth Legislature amends but does not materially change the above mentioned law. Acts 1885, p. 13. See also said Acts, page 83, for a law punishing persons preventing actual settlement on school lands. The Twentieth Legislature, Acts of 1887, page 83 et seq., practically repeals all former laws and enacts a new one for the sale of school lands, and in this act first occurs the term, "When any portion of said land has been classified to the satisfaction of the Commissioner under the provisions of this act or former laws, such land shall be subject to sale, but to actual settlers only," etc., and makes no exception whatever, but does require that the settler reside upon his land for three consecutive years, and it may be sold in quantities not to exceed four sections to the same settler. It is in this act that the term "subject to sale but to actual settlers only" first occurs; and it is in this act that first occurs the legal provision requiring the settler to live on his home section for "three consecutive years," etc.; though the land board created in 1883 had previously made a regulation requiring it as well

as other things which the courts refused to sustain. This act, section 22, allows the detached sections to be sold upon such terms as the Commissioner of the General Land Office may prescribe. The Twenty-first Legislature again amended the law. See Acts of 1889, page 50, where they again reiterate the term "subject to sale but to actual settlers only." Note the fact that this is the first act making the exception and the first allowing sale without settlement. This Legislature passed an act validating the acts of the State Land Board. See Acts 1889, page 106. The Twenty-second Legislature (1891) again amends the school land law (Acts 1891, p. 180), but does not interfere with the clause "subject to sale but to actual settlers only," nor does it make any exception thereto except as in the Act of 1889. The Twenty-third Legislature did nothing with the school land law except extending time of payment of interest. See Acts 1893, p. 30. The Twenty-fourth Legislature (1895) passed an entirely new land law, but it retains the term "subject to sale but to actual settlers only." Section 9 of this act says, "All sales shall be made by the Commissioner of the General Land Office or under his direction, and he shall prescribe suitable regulations whereby all purchasers shall be required to reside upon as a home the land purchased by them for three consecutive years next succeeding the date of their purchase, except where otherwise provided." This act also allows the sale of the detached lands without settlement. This brings us up to the very act in question, and now let us see what defects in the law the Legislature desired to remedy. Up to this time there is much uncertainty as to whether a settler could make more than one purchase; he was allowed to buy it in certain quantities; but must he buy it all at one time? or could he make two or more purchases? and if he could make two or more purchases, how long in the aggregate must he live upon his home section to perfect his title to the additional lands? Must he live upon his home section for another three years after each purchase of additional lands? When could he pay out and patent his additional lands purchased after he had purchased his home section? The law was entirely silent and the common law could not settle such a question, therefore the matter was in deep darkness and doubt; this was apparent to anyone who would look into the matter at all, therefore it was well known to many members of the Legislature. They very naturally desired to give light on these questions and provide a remedy for these defects in the law as it then stood. Did they desire to abolish the actual settler feature? No; for they strengthen and make more certain that feature. Therefore the exception had been and read "except as otherwise provided." Now they make it read "except where otherwise provided by law" (article 4218f), leaving no room for doubt whatever from what source the exception must and could come. Could the exception come from a ruling or provision of the Commissioner of the General Land Office? No; for he is left no discretion in the matter. Could it come from a construction of the law, the exception not being made in terms? No; for the law says that it must come by provision of law and the term excludes any ex-

ception but one provided by law, and if the law did not in terms make an exception there could be none, and the law makes but one exception, and there is not and can not be but the one lone exception of the detached and isolated lands as mentioned in article 4218y. Did the Legislature desire that the settler should be able to make more than one purchase? Yes; for the law in terms says so and gives him the right to make additional purchases. Art. 4218f. Did the Legislature desire that the settler should live upon his home section an additional three years after each purchase? No; for the law in express terms says that when he has lived on his home section for three years, the additional land may be patented at any time. The law does not say that when the home section has been resided upon for three years other lands can be bought without the condition of actual settlement. The law further says: "In all cases where a settler purchases more than one section the lands in excess of one section so purchased must be situated within a radius of five miles of the land occupied by him." The law does not say that the lands in excess of one section so purchased must be situated within a radius of five miles of the basis, home, parent, or mother section, but uses the expression above quoted. There is not a semblance of a provision of law giving to nonresidents or others than actual settlers the right to buy any State school land from the State of Texas, except the provision contained in article 4218y. Hence the Commissioner of the General Land Office erred in selling the land in question to appellee, and he took and could take no title whatever to it. The Commissioner had no discretion in the matter whatever; the law declared that the land should be sold to actual settlers only, except where otherwise provided by law, and there is and was no provision of law by which the land in question could be sold to any person who did not occupy land within a radius of five miles of the land sought to be purchased. The law gives the right to purchase additional land to the settler occupying land within a radius of five miles of the land sought to be purchased. This right is not given to the owner of the basis section regardless of where he lives; in fact the basis section is not mentioned in this connection at all. The law says, "Any bona fide purchaser who has heretofore purchased or who may hereafter purchase any lands as provided herein shall have the right to purchase other lands in addition thereto." Art. 4218f. Under the provisions of the said article no one but an actual settler can purchase, for it declares that "such land shall be subject to sale but to actual settlers only." The following clause in the said article is the one which appellee claims gives him the right to purchase: "And if he or his vendor has already resided upon his home section for three years, or when he or his vendor or both together shall have resided upon it for three years, the additional lands purchased may be patented at any time." Appellant on the contrary denies that the said clause treats of any purchase at all; but that it is treating of the time when additional lands legally bought may be patented,—this and nothing more. It plainly and positively declares that when the home section can legally be

patented the additional lands legally bought can also be patented, and is clearly intended to relieve the purchaser of having to live on his home section an additional three years after each purchase made by him.

*Beall & Beall* and *A. H. Kirby*, for appellee.—A bona fide purchaser and owner of a section of school land, whether as an original purchaser or as assignee of such original purchaser, can purchase additional lands not to exceed three sections, which additional lands may be patented at any time provided the home or parent section has been occupied according to law for a period of three years next succeeding the purchase of same.

An assignee of an original purchaser of a section of school land which has been occupied for three years as the law directs by such original purchaser, can purchase and take title to additional land without continuing the occupancy of the original home section.

No regulation has at any time been made by statute requiring more than three years occupancy of such lands, and to both the actual settler or occupant of such land and the bona fide purchaser of such land, having been occupied as required by law, is given by statute the right to purchase and own three additional sections thereto. Why then should appellee not be permitted to purchase and own his three additional sections? The State recognizes his title to his land purchased by him as assignee; he is not required to further reside thereon (this penalty having been paid and the statute satisfied). And while he is not residing thereon, he has same in use, needing other lands in connection therewith, and the law as above quoted plainly gives him the right to add to his said land other such lands in a limited quantity. He makes his application for and purchases said land, and we insist that the spirit, policy, and letter of the law has been fully met and complied with, and that appellee has a good equitable title to the land in suit. To hold to the contrary, it would become necessary to engraft upon the statute a provision not set out nor indicated, which would tend to endless confusion and would defeat rather than uphold the plain statutory provisions in this particular. If appellee's grantor had the right to make such a purchase, then clearly appellee himself had such right; and to hold that appellee's grantor could not have made such a purchase without continuing his occupancy of the home section, would contravene the plain statute quoted. We submit that the judgment of the lower court should be in all things affirmed, and we so pray.

*N. A. Rector*, also for appellee (in support of motion for rehearing, which was overruled.)—Section 5 of the Act of 1895, article 4218f, provided that the school lands should be sold "to actual settlers only," without the limitation "except where otherwise provided by law," and yet section 26 of said act, article 4218y, provided for the sale of isolated and detached sections. So that we must conclude that the limitation in the amendment of 1897, of said section 5, of 1895, "except where other--

wise provided by law," could not refer to the exception in the sale of isolated and detached sections. The law of 1887 first declared for the sale of school lands "to actual settlers only," and section 22 of this act also provided for the sale of isolated and detached sections without requirement of settlement. The law had been upon our statutes from 1887 to 1897, declaring without the qualification "except where otherwise provided by law," that school lands should be sold "to actual settlers only."

Numbers of decisions of our Courts of Civil Appeals and not a few of this court had recognized the exception in the case of sales of isolated and detached sections, notwithstanding the unqualified declaration of the several acts that school lands should be sold "to actual settlers only." It was never supposed by any lawyer nor by any court that the qualification "except where otherwise provided by law" was needed in order to give effect to the subsequent section as to the sale of isolated and detached lands. Indeed, it seems too plain for argument that the Legislature never had in view article 4218y, which relates to the sale of isolated and detached sections, when it added the limitation "except where otherwise provided by law" in the amendment of 1897.

The very amendment of article 4218f of 1897 does "otherwise provide by law" for the sale of school lands "except to actual settlers only." Said amended article provides, "Any bona fide purchaser who has heretofore purchased, or who may hereafter purchase any lands as provided herein, shall have the right to purchase other lands in addition thereto." Note the use of the word "purchaser," instead of the word "settler." Now, note the language of the Act of 1895, section 8, which was repealed by the law of 1897 and most of its provisions embodied in the amended article 4218f. Said section 8 reads, "Any bona fide settler who has heretofore purchased, or who may hereafter purchase, not exceeding one section of agricultural land, shall have the right to purchase three strictly pastoral sections upon his making oath," etc. If we now turn to article 4218f, as amended by the Act of 1897, we find the law as it aforetime was, changed only in the following respects: There was added to said section 5, which declared that school lands should be sold to actual settlers only, the qualification "except where otherwise provided by law." Said section 8 of the Act of 1895 had been repealed, and that part thereof relating to the sale of additional lands embraced in article 4218f. The term used in said section 8, "any bona fide settler," was amended so as to read "any bona fide purchaser." The change of the term settler to that of purchaser was certainly not accidental and meaningless, as a further discussion of said amended article will demonstrate.

Now let us continue the quotation from the amended article 4218f, "provided that the total purchases shall not exceed four sections, and that it shall not include more than two sections of agricultural land, upon his making oath," etc. The only change in the Act of 1895, section 8, was the privilege given to purchase two sections of agricultural land instead of one; but the whole purchase was still limited to four

sections. The Act of 1895, in our opinion, did not, as stated in the court's opinion, require the purchaser to buy all the additional land at once. The language is, "shall have the right to purchase three strictly pastoral sections, upon making oath," etc. If the Legislature intended that the three additional pastoral sections must be bought, if bought at all, in one single purchase, it did not so say.

The remaining portion of said section 5, article 4218f, as amended, is substantially a new addition to said section as it stood in the Act of 1895.

Before discussing the remaining portion of this article we wish to notice the statement in the opinion of the court to the effect that the bona fides referred to is the vendee's "good faith in settling upon the land." We do not believe this conclusion is correct. Section 9 of the Act of 1895 (Revised Statutes, article 4218j) provides for the sale by one purchaser to another, and directs that the purchaser or his vendee shall occupy his section for three years, and further specifies what kind of proof of occupancy shall be made. This section was in full force and not amended by the Act of 1897. If the three years had not been completed by the original purchaser, his vendee was required to complete it. Section 10 of the Act of 1895 (Revised Statutes, article 1418k) provides, among other things, for patenting lands after three years occupancy, and also provides the manner in which a vendee of the original purchaser may substitute his purchase in the General Land Office for that of the former, by which the obligation of the first purchaser would be canceled and that of his vendee substituted. If the three years occupancy had not been completed, the vendee had to make an application to purchase in the exact form as the original purchaser had done, and file his obligation for the balance of the purchase money upon the same form as did the original purchaser. Under the provisions of said section and the rules and forms adopted by the commissioner, if the three years occupancy had been completed when the vendee bought, the affidavit of occupancy was not required of him. By the substitution of his application and obligation, he became a good faith purchaser from the State (Thomas v. Wolfe, 40 Southwestern Reporter, 182); and the bona fides required of him referred to all of the provisions of the law; but when occupancy of three years had been completed it did not and could not refer to settlement, as that had been completed and was not required further by statute nor by the rules, regulations, and forms prescribed by the Commissioner. He must not have bought in collusion, nor for the benefit of any other person, nor for any corporation. If in any of these respects he was not a bona fide purchaser, his purchase was void. Is the conclusion not irresistible that this court is in error in holding that the bona fides referred to in the amended section 5 of the Act of 1895 related only to settlement by the vendee; and in announcing the doctrine that the State was in no way interested in the bona fides of the trade, or deal, between the original purchaser and his vendee?

It must be borne in mind that in the amendment of said section 5

the Legislature had in mind, and were certainly attempting to provide for the purchase of additional lands by three distinct classes of persons, who were under distinct conditions and circumstances: first, where occupancy had been completed by the original purchaser, either alone or in connection with that of his vendee; second, where neither he, alone, nor in connection with his vendee, had completed the three years occupancy; and third, where no occupancy had begun under a prior purchase, but where the home section and the additional lands were sought to be purchased thereafter at the same time.

Prior to this amendment, the location of the additional lands that might be purchased with reference to the mother section had not been defined by statute, and applicants had sought to force on the Commissioner the construction that the additional land might be bought in a distant county. By the amendment, for the first time, the radius of five miles was incorporated in the statute.

The only difficulty, as we apprehend, in the interpretation of this amendment originates in the use of the term, "In all cases where a settler purchases more than one section, the land in excess of one section so purchased must be situated within a radius of five miles of the land occupied by him." Let us see if the court has construed this amended article correctly. It must be remembered that Andy Scott, the original purchaser, at the date of this amendment, had, in himself, completed the three years occupancy and had made proof thereof and filed the same in the Land Office, and at that time need not have been an actual settler on his home section. He, and his vendee under him (appellee), occupied the position of the first class of persons referred to, for whom the Legislature of 1897 was providing; and it enacted that he or his vendee might purchase additional land, and that the additional lands might be patented at any time. Under the law he, at that time, was under no requirement to be then an actual occupant or an actual resident settler in good faith. If he had already occupied the mother section for three years and had filed in the Land Office a proof of occupancy, he could buy additional lands, and they could be patented at any time. If Andy Scott had this privilege, then his vendee McCall had the same privilege. Why should this court interpolate the requirement of actual settlement? Why should the original purchaser, or his vendee, who under the facts of this case might be lawfully off of said section, be required to return to the mother section and reoccupy it in order to bring himself under the class of those entitled to buy additional lands? Was it not the purpose of the Legislature to grant to the original purchaser or his vendee, when occupancy had been completed, the same privileges it gave to those who might buy after the amendment? Such latter purchaser must be an actual settler and continue such occupancy for three years; but the original purchaser had already fulfilled this requirement. He had gone in the forefront of civilization and lived out in good faith his three years occupancy, and is now, perhaps, gone with his family to the nearest

town for the purpose of schooling his children and giving to his family the benefits and associations of more congenial society. He had both the legal and moral right to do this. Now if we are to interpolate the burden of present occupancy, it ought to be demanded by some cogent reasons. If there be a reason, what is it? Under the construction of the court he, or his vendee (appellee), must actually reside as a bona fide settler on the mother section, at the time he or his vendee buys the additional land. If so, for what length of time? The answer is, for no length of time; if only an actual settler at the very time he buys the additional lands, he may, eo instanti, abandon such possession, and have all of his land, home, and additional land patented at any time. This conclusion is so absurd that we ought to reject it, unless the language used impels us to it with irresistible force.

But the language last quoted was used by the Legislature for the purpose of fixing the radius in which the additional lands must lie. It was framed more especially to meet the requirements of such purchasers as should occupy the position and be in the condition of the second and third classes for which the Legislature was acting. Strictly and technically speaking it applied the radius limit to them alone, and, in strictisimi legis, applied to the future purchase of both the home section and additional lands. This is manifest from the use of the words "where a settler purchases (that is, shall purchase) more than one section, the land in excess of one section so purchased (not that had been formerly purchased) must be situated within a radius of five miles of the land occupied by him."

Section 5, Act of 1895, article 4218f, which placed school lands upon the market for sale to "actual settlers only," "except where otherwise provided by law," did not refer, by limiting clause "except where otherwise provided by law," exclusively to article 4218y relating to the sale of detached lands.

In addition to the articles referred to in our argument filed herein, we call the court's special attention to the following articles of the Revised Statutes of 1895, which were in force after the amendment of 1897, when appellee bought the additional section in controversy.

Section 12, Act of 1895, article 4218m, provides that where actual settlement has been made on any school lands, and three years occupancy has been completed and proof of same filed in the Land Office, and such home section is found to be in conflict with older valid surveys, such original purchaser may purchase other lands of the classes mentioned in this act without being required to reside thereon. May not the limiting clause, "except where otherwise provided by law," refer to this article as well as to the article with reference to purchase of detached lands?

Article 4218j, in conferring a prior right to purchase to an owner whose land had been or might thereafter be forfeited for the nonpayment of interest, conferred the prior right to repurchase for ninety

days, "without the condition of settlement and occupancy, in case it had been occupied for three consecutive years as required by law."

It will be observed that the Act of 1895 placed school lands on the market for sale to actual "settlers only;" this repurchase would amount in law to a resale, as all former rights had been forfeited.

Article 4218ff as amended by the Act of 1897, in conferring the right upon the owner of a home section who had completed the three years occupancy to sell additional lands, provides, "but in case of sale of any of said tracts after the completion of the three years residence, the vendee shall be exempt from the condition of settlement and occupancy." Such vendee would be required to file his application and obligation in the Land Office, and would thereby become a bona fide purchaser in good faith from the State, and yet would be especially exempted from the condition of settlement. May not the limiting clause, "except where otherwise provided by law," also apply to this class of purchasers?

Article 4218l provides that where the interest due on any obligation remains unpaid the sale shall be forfeited, and said land shall be again on the market for sale without the necessity of re-entry or judicial ascertainment, but provided, however, that in case the original purchaser shall die, his heirs or legal representatives shall have one year in which to make payment after the 1st day of November next after such death, and shall be absolved and exempt from the requirement of settlement and residence thereon. Do not such heirs and legal representatives fall within the clause "except where otherwise provided by law?"

*Beall & Beall, Earnest & Shepherd,* and *M. Dies,* for appellee, also filed argument in support of the motion for rehearing. The motion was overruled November 15, 1900, the court having also overruled a motion to permit oral argument thereon.

*Looney & Hamner* also filed argument in support of the ruling of the trial court, on behalf of purchasers similarly interested with appellee.

GAINES, CHIEF JUSTICE.—In this case, the Court of Civil Appeals for the Second Supreme Judicial District have certified the following statement and question:

"The land in controversy is school section 106, block 3, in Fisher County, within a radius of five miles of section 130 in the same block. The Commissioner of the Land Office awarded it to appellee upon his application to purchase made September 3, 1897, not as an actual settler, but as a bona fide purchaser of said section 130 from Andy Scott, who had purchased it from the State as an actual settler under the Act of 1883, and who had resided thereon continuously for three years next succeeding his purchase, making proof of such occupancy, which was accepted by the Land Commissioner. Appellee has never

resided upon either of these sections, but Colorado City has been the place of his residence since before the date of his application to purchase.

"Appellant made application subsequent to that of appellee to purchase said section 106 as an actual settler on section 132 in the same block, the section in controversy being also within a radius of five miles of section 132, but his application was rejected. Both parties complied in all respects with the law. That is to say, appellee is entitled to the land if he was eligible as a purchaser, but if he was not, appellant is entitled to the land by virtue of his actual settlement on section 132 and his subsequent application to purchase the land in controversy and his compliance with the law in such cases provided. He brought this suit, and was denied a recovery upon the ground that appellee was entitled to the land under the award made to him.

"The decision of the case, therefore, turns upon the right of appellee to purchase a section of school land in Fisher County without being an actual settler upon it or any other section of school land, and involves a construction of section 5 of the amended Act of 1897, Revised Statutes, article 4218f. We deem it advisable to certify this question to your honors for decision; that is, whether or not appellee was entitled to purchase the land in controversy as additional lands to section 130, without settling or residing upon the latter or home section, although his vendor settled and resided upon it for three years next after his purchase, which was in compliance with the law. Abstractly stated, the question is, can a bona fide purchaser of a section of school land from one who has purchased it from the State and resided upon it for three years as an actual settler, purchase an additional section of land from the State, as provided in article 4218f of the Revised Statutes, without himself becoming a settler or resident upon either section?"

The law in force at the time the parties made their respective applications to purchase the section of land in question was the Act of May 7, 1897, in relation to the sale and lease of the public free school and asylum lands. That act amended article 4218f of the Revised Statutes and added articles 4218ff and 4218fff. Original article 4218f reads as follows: "When any portion of said land has been classified to the satisfaction of the Commissioner under the provisions of this chapter or former laws, such lands shall be subject to sale, but to actual settlers only, and in quantities of not less than forty acres, and in multiples thereof, nor more than one section containing six hundred and forty acres more or less; provided, that when there is a fraction less than forty acres of any section left, such fraction may be sold; but lands classified as purely pasture lands may be sold in quantities not to exceed four sections to the same settler." The following is the article as amended: "When any portion of said land has been classified to the satisfaction of the Commissioner of the General Land Office, under the provisions of this chapter or former laws, such land

shall be subject to sale, but to actual settlers only, except where otherwise provided by law, and in quantities of not less than eighty acres or multiples thereof, nor more than four sections containing six hundred and forty acres, more or less; provided, that the purchaser shall not include in his purchase more than two sections of agricultural land; and provided, that where there is a fraction less than eighty acres of any section left unsold, such fraction may be sold. Any bona fide purchaser who has heretofore purchased or who may hereafter purchase any lands as provided herein shall have the right to purchase other lands in addition thereto; provided, that the total of his purchases shall not exceed four sections, and that it shall not include more than two sections of agricultural land, upon his making oath that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase thereof. And if he or his vendor has already resided upon his home section for three years, or when he or his vendor, or both together, shall have resided upon it for three years, the additional lands purchased may be patented at any time. In all cases where a settler purchases more than one section, the lands in excess of one section so purchased must be situated within a radius of five miles of the land occupied by him. Where any of the lands referred to in this act have been sold prior to July 30, 1895, in quantities greater or less than forty acres or multiples thereof, and are in good standing as to interest payments, they may be patented in such quantities. In any cases where lands have been forfeited to the State for the nonpayment of interest, the purchasers or their vendees may have their claims reinstated on their written request, by paying into the treasury the full amount of interest due on such claim up to the date of reinstatement; provided, that no rights of third persons may have intervened. In all such cases, the original obligations and penalties shall thereby become as binding as if no forfeiture had ever occurred."

But for the words in the amended article, "except as otherwise provided by law," there would be no difficulty in determining the question. The lands are to be sold "to actual settlers only,"—that is to say, to actual settlers either upon the section sought to be purchased or upon a section either then purchased or sought to be purchased at the same time, which embraces, within a radius of five miles, the additional section or sections desired. Now, with regard to the words, "except as provided by law," it is to be noted, in the first place, that article 4218y expressly provides that certain detached and isolated sections and parts of sections may be sold to any purchaser other than a corporation, "without actual settlement." With this exception in view, it is to be remarked, in the second place, that it would seem that if the Legislature had intended to make another exception in the very section in which it declared that the lands should be "subject to sale to actual settlers only," they would have made an express provision to that effect, or would have used such terms as would leave no doubt as to

that intention. Instead of doing this, they have, as we think, used language which not only fails to make clear an intent to make an exception, but which, by reasonable implication, shows that such intention did not in fact exist. The article under consideration is crudely framed and abounds in incongruities, and there are expressions in it which, disconnected from their context, admit of the construction that when a purchaser had resided for three years upon one section, he could then abandon it and buy three other sections without actual settlement. Take the two provisions which read as follows: "Any bona fide purchaser who has heretofore purchased or who may hereafter purchase any lands as provided herein shall have the right to purchase other lands in addition thereto; provided, that the total of his purchases shall not exceed four sections, and that it shall not include more than two sections of agricultural land, upon his making oath that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase thereof. And if he or his vendor has already resided upon his home section for three years, or when he or his vendor, or both together, shall have resided upon it for three years, the additional lands purchased may be patented at any time." The first sentence, literally construed, would apply only to the original purchaser from the State and would give him the right to purchase other sections notwithstanding he had abandoned his first, though he had never completed his term of residence of three years. This proves too much; so that it is clear that it was intended that the language should be qualified and limited by other provisions of the article, and notably by that provision which declared that the lands should be sold to actual settlers only. But that by the terms "bona fide purchaser" is meant not only the original purchaser but a purchaser from him, is made manifest by the words, "and if he or his vendor," in the next succeeding sentence. Indeed, these last words, literally construed, indicate that by bona fide purchaser is meant only the vendee of the original purchaser, and would exclude an original purchaser from the privilege granted of having the additional lands patented at any time after a three years residence upon the section originally purchased. The words, "bona fide purchaser," seem to us inapt when applied to other than the original purchaser. His good faith is involved in his settlement of the land and it is appropriate to speak of him as a bona fide purchaser, so that if his vendee is embraced by the terms, as the words in the next sentence, "he or his vendor," require us to hold, it must also be held that the bona fides referred to is his good faith in settling upon the land. Clearly, the State has no interest in the good faith of the transaction as between him and the original purchaser, and therefore it is unreasonable to presume that it was intended to require that the sale, as between them, should be bona fide. This indicates that the purpose of the Legislature was not only to limit the right to purchase additional lands to one who had

purchased a section as a settler in good faith, but also to a purchaser from him who had bought in good faith with a view to settling and actually settled upon it, in pursuance of that intention. At all events, these incongruities in the provisions immediately under consideration are enough to show that the statute is loosely drawn and that the purpose of the Legislature can not be safely determined without considering the entire context. But the latter provision itself contains language which, in itself, leads almost irresistibly to the conclusion that neither an original purchaser nor his vendee has a right to purchase additional lands, unless he be actually residing upon the original section at the time of his application, notwithstanding that either or both together may at the time have resided upon it for the three years. The language is, "if he or his vendor has already resided upon his home section," etc. This implies that the section spoken of,— "the mother section," as it is sometimes called—must be the home of the applicant at the time he makes application to purchase other lands. It certainly means, we think, that in case of a vendee, it must be, at the time, his home. "If he or his vendor has already resided upon his home section." Whose home section? "His vendor" means necessarily the vendee's vendor, and so "his home section" must mean the vendee's home section. Without settlement upon it, or at least without the intention to settle upon it, it can not be his home. Again, the next sentence provides that the additional section sought to be purchased must be "within a radius of five miles of the land occupied by him." This implies that the favor was to be extended to an occupant of the land. Now, one may have a homestead upon land, under our exemption laws, which may be occupied by his tenant, or not actually occupied at all. So one may constructively occupy lands through a tenant, for the purposes of limitation. But we apprehend that a statute which starts out with the declaration that the free school lands shall be sold to actual settlers only except where otherwise provided, and which speaks of home and occupancy, means, in the absence of some language showing a contrary intention, actual homes and actual occupancy.

But looking to the original article 4218f in connection with the amended article, we see more clearly what the Legislature which passed the amendment regarded as the imperfections in the existing law, and the provisions which were necessary in order to supply its defects. One of the defects was that a settler was allowed to buy one section only of agricultural lands. Another was that in order to buy more than one section in any case, he must buy all at the same time. The first was remedied by providing that two sections of agricultural land could be purchased; and the second by providing that after the purchase of one section, the actual settler upon that section could purchase additional lands not exceeding three sections anywhere within a radius of five miles of his home section, without being required to settle upon the additional lands so bought. By the former law, by virtue of his settlement, he could purchase not exceeding four sections,

but all at the same time. By the new law, he was permitted, by virtue of his settlement and purchase of one section and of his continued residence thereon, to purchase additional lands, all not to exceed four sections, at any time after the first purchase. The reason of this was that four sections of pasture land was not regarded as more than was proper to the use and support of an actual settler and his family. He might not be able to buy the additional sections at the time of his first purchase. Hence it was deemed but just that being an actual settler upon land already bought, he should be allowed, at any time, to purchase the additional sections allowed by the law. Not only this; under the former law, he could sell his land and substitute his purchaser to his rights and obligations. By the new law, the first purchaser having been given the right to purchase additional lands, it was then provided, in effect, that his vendee who should purchase and settle upon the land should have the same privilege. This was a right given to an actual settler and is in consonance with the spirit which pervades the entire act in relation to the sale of school lands. The construction contended for by appellee would make the right to buy additional lands appurtenant to the section first purchased, whenever it had been continuously resided upon for the period of three years. We fail to see the policy of such a provision. If the intent had been to induce the settlement of the first section by giving a right to purchase new lands, whenever the settler had occupied such section for three years, it seems to us the privilege would have been conferred upon the first purchaser himself and not upon his vendee.

Section 16 of article 7 of our Constitution provides that actual settlers upon lands donated to counties shall have a preference right to purchase 160 acres of the land upon which they have settled. Section 4 of article 14 prohibits the sale of scrip by the Land Office except to actual settlers. Section 6 of the last named article donates to each head of a family who has no home 160 acres of the public domain, and to every single man, 80 acres, upon condition that they reside upon it for the term of three years. In disposing of the school lands, the Legislature, with a view doubtless to encourage the settlement of the country and to enable the homeless to procure homes, has pursued the same policy and has, up to the time of the passage of the amended article we have been considering, provided that these lands, with the exception of the isolated and detached sections, should be sold to actual settlers only. To hold now that by the amended article the Legislature intended to allow either an original purchaser who has resided for three years upon the land so purchased but who has ceased to reside upon it, or his vendee, who has never settled upon the land, to buy other lands within a radius of five miles of the original section, is to hold that they have departed from the spirit of the act and the well established policy of previous Legislatures without any good reason appearing to justify such course. The language of the article in question, though somewhat obscure and difficult of construction, not

only fails to show that such was the intent, but rather leads to the conclusion that the purpose was to require that both the original purchaser and his vendee must be an actual settler upon the parent section, in order to give a right in any case to buy additional lands.

The case of Chancy v. State, 84 Texas, 529, upon which the Court of Civil Appeals based its ruling in the case of Thomson v. Hubbard, 53 Southwestern Reporter, 841, involved the construction of a very different statute, and is not in conflict with the views herein expressed.

We answer the question in the negative.