### J. H. JONES v. A. F. BOURBONNAIS.

#### Decided January 26, 1901.

1.—Jurisdiction—Transfer of Case.

Where, by agreement of the parties, a case was transferred for trial to another county under article 1270, Revised Statutes, and the court duly entered its order "that the venue in this case shall be and is hereby changed" to such other county, the latter's jurisdiction attaches, notwithstanding that the agreement provided that all papers then on file in the cause should be transmitted, and when so transmitted the court of such latter county should have jurisdiction, and the clerk of the court had failed up to the time of trial to transmit all the papers as agreed on.

2.—Same—Plea to Jurisdiction Necessary.

The question of the jurisdiction of the latter county, after transfer of the case to it, should have been raised, it seems, by plea therein.

3.—State School Land—Actual Settlement.

See evidence of facts held not to constitute an actual settlement upon State school land, but to show merely an intention to settle thereafter.

4.—Same—Excuse for Failure to Settle.

It is actual settlement in fact that fixes the status of an eligible purchaser of additional State school land, and a good excuse for failure to make such settlement will not suffice in lieu thereof. Rev. Stats., arts. 4218f, 4218i.

Appeal from Lipscomb. Tried below before Hon. B. M. Baker.

*H. E. Hoover* and *C. Coffee,* for appellant.

*W. D. Fisher* and *Plemmons & Veale,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellant September 30, 1898, in the District Court of Ochiltree County, to try title and recover of appelle the possession of State school land section 52, block 43, surveyed by the Houston & Texas Central Railway Company, the same being claimed by appellant, Jones, under an award from the Commissioner of the General Land Office, as "additional land" to his

home section, 192, of the same survey. On December 12, 1898, the cause was transferred by agreement to the District Court of Lipscomb County. At the May term, 1900, of the District Court of Lipscomb County, the cause came on for trial before a jury, which, having heard the evidence, returned a verdict for appellee in obedience to a peremptory instruction of the court. From the judgment in appellee's favor, appellant has appealed, assigning error to the action of the court in assuming jurisdiction, in refusing appellant a continuance, in the admission and rejection of evidence, in refusing special charges requested, and in peremptorily instructing the jury as stated. We think a determination of the assignments questioning the jurisdiction of the court and the peremptory charge of the court will dispose of all questions presented on this appeal, and we therefore address ourselves to these questions first.

Article 1270, Revised Statutes, reads: "The court may, upon the written consent of the parties thereto, or their attorney, filed with the papers of the cause by an order entered on the minutes, transfer the same for trial to the court of any other county having jurisdiction of the subject matter of such suit." In accord with this article, the parties to this action, by their respective attorneys, agreed in writing that the venue should be changed from the District Court of Ochiltree County to the District Court of Lipscomb County, which agreement was duly filed, and upon which the court duly ordered the venue changed as agreed upon; said order being duly entered upon the minutes. The agreement, however, provided that all papers then on file in the cause should be transferred and transmitted to the District Court of Hemphill County, and that "* * * when said papers are transferred to the District Court of Lipscomb said cause shall stand for trial in said court, the same as if said court had had original jurisdiction over same, without any further formality or the use of certified copies;" and it is here insisted that the jurisdiction of the District Court of Lipscomb County did not attach, by reason of the fact that the clerk failed to transmit all the papers in the cause as agreed upon. Reading the agreement as a whole, we do not construe it as conditional in any sense. It reads in part: "It is agreed by and between the parties in the above numbered and styled cause that the venue in said cause be changed from the District Court of Ochiltree County, Texas, to the District Court of Lipscomb County, Texas. It is agreed that the venue in this case shall be, and the same is hereby, changed to the District Court of Lipscomb County, Texas."

These sentences are complete within themselves, and not made conditional by the subsequent provision requiring a transmission of the papers. The absence of papers material as evidence or otherwise might constitute sufficient ground for a postponement or continuance of the cause in the District Court in Lipscomb County, but could not defeat the jurisdiction of the court acquired by unconditional order entered upon the minutes of the District Court of Ochiltree County as provided by the statute. To which may be added the further fact that the jurisdiction of the District Court of Lipscomb County was not there questioned by plea

to that effect, appellant merely making formal application for a postponement or continuance in order to procure certain written evidence of the proper classification of his home section, which had been on file, but not transmitted as had been provided in the agreement. We think the assignment involving this question should be overruled.

It remains to be determined whether, under the undisputed facts, the court was authorized in giving the peremptory charge in appellee's favor. One of the prerequisites to the acquisition of "additional lands" under the laws regulating the disposition of our public free school domain is actual settlement upon the home section at the time of the application to purchase such additional lands. Rev. Stats., art. 4218f; Schwarz v. McCall (Texas Sup.), 57 S. W. Rep., 31. The undisputed evidence shows that on January 29, 1898, appellant, in due form, applied to purchase his home section, 192; that on August 17, 1898, he, in due form, made application to purchase section 52, in controversy, as additional to his home section, by virtue of which applications, and other formalities complied with, both sections were awarded to appellant by the Commissioner of the General Land Office. Appellant testified on cross-examination as follows:

"I settled on section 192 on January 29, 1898. All that I did as an evidence of my settlement was to go upon the land and have the lines run. W. Coffee did the surveying. I carried the chain. We had the field notes, started from the corner of another section. I was on the land two or three times before filing. Went on the land and stayed there a while. Was hunting for a home. Got off my horse. Was there two or three hours. Prior to this time we had a ranch in Wheeler County. Held it by lease. We then leased the CC ranch—me and my brother— in Roberts County. I don't know that I settled before I surveyed. I did not build a house, dugout, nor stretch a tent, nor leave a bed nor any cooking utensils on the land. I can not tell of any other act relative to my settlement upon the land, than that I had the line run out on one side of the section. After I filed, I made improvements in the latter part of June. I put a dugout on the land. I was taken sick when I went back to Miami. Was sick until March 1st. I went to Fort Worth to see specialist. Got back to Miami April 1st. Then went to Mobeetie, and brought cattle to Miami to ship. Then came to the CC ranch to receive bunch of horses. From there went to New Mexico to get herd of cattle. Got back middle of June. Rested at ranch several days, and then Jim Turner went with me to help build dugout. 192 is seven miles from ranch. This is the first time I, or any one for me, started dugout on 192. We also built a dam. At this time we dug a place almost two feet deep; about 8x10. We did not cover it then. Don't remember whether we slept there that night or not. Generally carry my bed in the wagon, but don't remember if had it at this time. In the summer I went back, and carried a couple of men with me to help on the dugout. I did not carry any trunk there. Have not got any. I kept some of my clothing at Canadian, some on the ranch, some at Miami, and some on 192.

Never left my clothes on 192 until some time after I got back from New Mexico. I don't remember what furniture I put in the dugout. I put a cook stove there. I first began to use it in the fall. Dugout was about 5½ feet on inside. I stayed on ranch a while after I came back from Mexico, because I had no improvements on my place. Yes; I suppose I could have had improvements built there while I was sick and away from home. I did not have time to put improvements on my place. I never did any work of any kind upon this land until the latter part of June, 1898. All I did was to go on the land, survey one side of it, and file upon it. Never placed any lumber, bedding, or anything on the land whatever until the latter part of June. I never slept in the dugout one night."

On redirect examination he testified: "The reason I did no improvements during the time I mentioned was on account of business, and being taken sick. I took the place in good faith for my home. Had no other home during the time I mention, and acquired no other since. I began to improve this place just as soon as my health and business would permit. During the time of my sickness I was compelled to stay in town, as it was thirty miles to the nearest doctor, and about seven miles to the nearest neighbor. My home is now on that place. I have erected a box house thereon, and have at all times stayed on the place since my health and business would permit. This house was erected on the place in the summer of 1899. On the day I made my application to purchase the land in controversy, and prior thereto, I had erected my dugout on the home section. On the 17th day of August, 1898, the date I applied for section 152, I had erected my dugout on my home section, No. 192." (Plaintiff closed.)

The evidence of appellee, which is uncontradicted, shows that he, together with his family settled upon the section in controversy May 30, 1898, and that they have resided thereon as a home ever since; appellee applying to purchase the same September 30, 1898. Appellee testified: "At the date of my application to purchase this land there was no one residing upon section 192, block 42. I had occasion to pass there often. No improvements of any kind were put there until last of July, 1898. There was a hole dug in the ground about 8x10, about two feet at one end and one and one-half feet at the other. Some time in August afterwards this was covered over, and dugout made five feet deeper. In October a little dam was made where the spring ran down. In November I was there, and saw an old stove in the dugout. Stove had a T joint on it, and one end of it pointed towards a hole in the roof. There was no door, but couple of poles laid up against the opening. I saw evidences that yearlings had been in the dugout. This was on road between my place and my brother's. I never saw Jones on section 192. He did not reside there before I filed my application, on September 30th, nor afterwards, that I have ever known of. I think I would have known it, had he

lived there. In the summer of 1899 he had a little box house put there, and had the men build a little pasture."

A. A. Parsell testified: "First improvements that was put on 192 was in July, 1898. There was made then a little hole, about 9x10, and about eighteen inches or two feet deep. I can't remember the exact date, but it was two months afterwards before the roof was put on. A dirt roof was put on it. At the door it was about four feet high. A man could not stand up in the dugout. There was no furniture or anything in the dugout at this time. Later on I saw an old stove. It had a T joint on it, but was not in condition to put fire into, and had no signs there of habitation. There was an old chuck box in the corner, with nothing in it. No pots, cooking utensils, beds, or anything of the kind. House was open, with no way to close it. This was in the fall of '98. Looked as though yearlings had been staying in the dugout. I saw Jones riding over the range at different times; also at the ranch, loafing around and doing chores. Jones has never resided on 192 since the date of his purchase, to my knowledge; and I have lived near there all the time, and worked the range, and would have known it had he lived there."

We think it clear from this evidence, which was substantially all there was on the subject, that appellant was not an actual settler upon said section 192 at the time of his application to purchase the section in controversy. Nor was he such actual settler upon said home section at the date of his application to purchase it, or within six months thereafter, so as to bring appellant within the operation of the validating act approved May 27, 1899. See Gen. Laws 1899, p. 259. Appellant's acts prior to said times were, at most, acts of preparation for settlement. They were sufficient, perhaps, to evidence an intention to settle upon section 192 as a home, but they fall short of establishing the additional essential of settlement in fact. It may also be true that appellant's sickness and other circumstances furnish reasonable excuse for his failure to make actual settlement, but this was his misfortune. Many persons, doubtless, have from like causes been deterred from making the effort to acquire part of the magnificent domain dedicated to our public free school fund, and offered for sale upon such favorable terms. We must remember, however, that it is actual settlement in fact that fixes the status of an eligible purchaser, and not a sufficient excuse for failing to make such settlement. Such being our conclusion, it follows that other assignments of error become immaterial, and that the court properly instructed the jury to find for appellee. No reversible error appearing, the judgment is affirmed.

*Affirmed.*